No. 97-171

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 253N

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

BENJAMIN G. LODGE,

Defendant and Appellant.

APPEAL FROM: District Court of the Seventeenth Judicial District,

In and for the County of Blaine,

The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Pamela P. Collins, Assistant Attorney General, Helena, Montana; Mark Harshman, Blaine County Attorney, Chinook, Montana

Submitted on Briefs: May 14, 1998

Decided: October 20, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2 Benjamin G. Lodge (Lodge) was charged by Amended Information in the Seventeenth Judicial District Court, Blaine County, with two felony counts of criminal endangerment and one felony count of criminal mischief or, alternatively, one misdemeanor count of reckless driving. Lodge was also charged with a misdemeanor count of driving while his license was suspended or revoked. After a jury trial, Lodge was found guilty on one felony count of criminal endangerment, on the misdemeanor count of reckless driving, and on the misdemeanor count of driving with a suspended or revoked license. Lodge appeals his conviction for criminal endangerment and his sentence. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.**

**¶3 We address the following issues on appeal:**

**¶4 1. Was the evidence sufficient to support Lodge's conviction for criminal endangerment?**

¶5 2. Did the District Court err in denying Lodge credit for time already served against his sentence for criminal endangerment?

## Factual and Procedural Background

¶6 On December 2, 1994, at approximately 1:00 a.m., Officer Robert Painter (Painter) of the Harlem Police Department was patrolling north on Main Street. At the same time, Harlem Chief of Police Rick Johnson (Johnson) was patrolling south on Main Street. As they met, Painter and Johnson stopped, rolled down their windows, and began talking with each other. Painter later testified at the trial on this matter that he then saw a blue passenger car traveling on Central Avenue at a high rate of speed.

¶7 Painter told Johnson that he saw someone speeding. Painter turned on his top lights and siren and started to pursue the car. Painter testified that the car then pulled over to the right, almost came to a stop, and that its lights were turned off. Painter stated that before the car came to a complete stop its lights came back on and that the car pulled back into the traffic lane. Painter followed the car as it turned onto Fourth Street Southwest. Painter then radioed Johnson to tell Johnson his location.

¶8 Painter testified that he followed the car on Fourth Street Southwest and continued to follow the car after it turned onto U.S. Highway 2. Painter stated that the car pulled away from him on the highway even though he was traveling approximately 70 miles per hour. Painter estimated that the car was traveling between 80 and 85 miles per hour. The car traveled on U.S. Highway 2 until it reached a truck route that runs back to Harlem. As Johnson caught up with Painter, the car turned onto the truck route and continued to drive toward Harlem.

¶9 Painter testified that Johnson took over the lead in chasing the car somewhere on the truck route. After Painter drove back into town, he patrolled on Fourth Avenue Southeast and listened to Johnson describe the chase as it was occurring. Johnson then told Painter that the car was back on the truck route heading toward U.S. Highway 2. Painter stated that he turned onto Main Street and then turned onto U.S. Highway 2. Painter next set up a roadblock in the eastbound lane by turning his vehicle sideways at an intersection with a stop sign. Painter stated that he had his top lights and siren turned on.

¶10 Painter testified that the car was traveling in the westbound lane toward him. Instead of stopping at the roadblock, Painter stated that the driver of the car made a sharp turn in front of his patrol car and started heading back to Harlem. Painter testified that the car came within six inches of hitting his patrol car. Painter either backed up or made a U-turn and continued chasing the car on U.S. Highway 2. Painter stated that the car was traveling about 40 to 45 miles per hour at this point of the chase.

¶11 Painter testified that he pulled up next to the car so that he could see who was inside. Painter stated that the driver had his head crouched at first but then he looked over at Painter and smirked. Painter testified that he recognized the driver as Ben Lodge, whom he knew. Painter stated that Lodge was the only person that he saw in the car. On cross-examination, Painter stated that the car's windows were tinted and rolled up.

¶12 When the vehicles were parallel, Painter stated that Lodge turned his car toward the patrol car which caused the vehicles to sideswipe. Painter testified that he turned his patrol car into Lodge's car to move it back over the centerline. The cars then separated. Painter testified that he next heard a loud noise, felt a strike, lost control of his patrol car, and ended up partially in a ditch next to the road. Painter stated that, from the ditch, he saw Lodge's car turn onto Main Street with Johnson in pursuit.

¶13 Painter started his patrol car, pulled back onto the road, and drove to Main Street. He then heard Johnson over the radio say that Johnson had found the car. Painter stayed on Main Street looking for people running from the scene. Johnson radioed Painter and told him to drive to the car's location. Painter drove to the car's location and searched the area for Lodge. Blaine County Deputy Sheriff Jim Brewer also drove to the car's location and helped search for the occupants of the car. The officers were unable to find Lodge that night.

¶14 Andrea Tsosie (Tsosie) and Zoni Cochran (Cochran) testified that they were outside of their houses and kept track of the police chase by listening to the sirens and the sounds of the two cars crashing into each other. Tsosie testified that she saw three people, a man and two girls, walking in the area after the police chase was over. Tsosie testified that she did not know the names of the two girls who were walking but that she recognized Lodge as the man. Similarly, Cochran testified that she

recognized Venus Bearcub (Venus) as one of the girls and that she recognized Lodge as the man.

¶15 In Lodge's defense, Bernadette Lodge (Bernadette), Lodge's mother, testified that she called the Harlem Police Department on December 2, 1994, and asked the dispatcher to have the officers back off so that the kids would not crash. Bernadette stated that she used the word "kids" in reference to Amanda Lodge (Amanda), her daughter, and Venus, her niece, who she testified were in her car. In contrast, Gloria Gone (Gone), a dispatcher for the Bureau of Indian Affairs Law Enforcement, testified that Bernadette called at 1:15 a.m. that night. Gone's log from that evening, which was introduced into evidence, stated that Bernadette called and asked Gone to call the Harlem Police Department and "tell them to quit chasing Ben and them kids, because they are going to cause them to wreck."

¶16 Anthony Matt (Matt), a friend of Lodge, testified that he gave Lodge a ride from Half Town, in Fort Belknap, to Hays on December 1, 1994, at approximately 9:00 p. m. Crystal DuBray (DuBray) testified that she was staying at Catherine Longknife's (Catherine) house in Hays that same evening. DuBray stated that Lodge came to Catherine's house between 7:00 and 8:00 p.m. DuBray testified that Lodge went to bed on Catherine's living room couch at approximately 11:00 p.m. or 12:00 a.m. DuBray also stated that she saw Lodge sleeping on the couch at approximately 3:00 a. m. Roger Longknife, Catherine's husband, testified that he saw Lodge sleeping on the couch at his house at approximately 1:30 a.m. Joe Longknife (Joe), Catherine's and Roger's son, testified that Lodge came to his family's residence in Hays at approximately 8:00 p.m. the evening of December 1, 1994. Joe testified that Lodge was watching television when he went to bed around 11:00 or 11:30 p.m. Joe also stated that he saw Lodge watching television the following morning.

¶17 Lodge testified on his own behalf that Matt gave him a ride to the Longknife's house on December 1, 1994. Lodge testified that he spent the night at the Longknife residence on the couch. Lodge stated that he was not driving his mother's car that night.

¶18 Venus, Lodge's cousin, who was 16 years-old at the time of the trial, and Amanda, Lodge's sister, who was also 16 years-old at the time of trial, testified that they borrowed Bernadette's car to drive to a convenience store to rent movies. Venus and Amanda decided to try to find someone old enough to buy some alcohol for

them. Venus and Amanda testified that they approached a man standing by a pay phone and asked him whether he could buy alcohol for them. The man stated that he had a liter of whiskey. Venus and Amanda testified that the man then got into the backseat of the car and that they began to drive around getting drunk.

¶19 Amanda testified that she and Venus decided to let the man drive because he did not appear to be drunk. Venus testified that the police then started chasing them. Venus testified that the driver "freaked out" and tried to "ditch" the police by speeding. Venus and Amanda testified that Painter rammed their car twice during the chase, forcing it to go into the ditch both times. Venus and Amanda stated that the driver then parked the car and that they fled and spent the night hiding in a ditch. Venus and Amanda thought that the driver said that his name was Frank and told them that he was from Washington. Venus and Amanda stated that they had not seen the man since that night.

¶20 On April 1, 1996, the State filed its Amended Information charging Lodge with two counts of criminal endangerment and one count of criminal mischief, or, alternatively, reckless driving. Lodge was also charged with driving while his license was suspended or revoked. The jury found Lodge not guilty of criminal mischief; guilty of one count of criminal endangerment; guilty of reckless driving; and guilty of driving with a suspended or revoked license.

¶21 The District Court sentenced Lodge to six months in the Blaine County Jail and a $300 fine for reckless driving. The court sentenced Lodge to 30 days in the Blaine County Jail and a $200 fine for driving with a revoked license. The court ordered that these misdemeanor sentences run consecutively. The court gave Lodge 206 days credit for time already served against these sentences.

¶22 The court sentenced Lodge to seven years with the Montana Department of Corrections with the last five years suspended for his conviction for felony criminal endangerment. The court recommended that Lodge be committed to the Swan River Correctional Training Center. The court ordered that Lodge's sentence for criminal endangerment was to run concurrently with his misdemeanor sentences. The court, however, did not give Lodge credit for time already served against his criminal endangerment sentence. Lodge appeals his conviction for criminal endangerment and the failure of the court to give him credit for time already served against his sentence for criminal endangerment.

## Issue 1.

¶23 Was the evidence sufficient to support Lodge's conviction for criminal endangerment?

¶24 This Court reviews the sufficiency of the evidence to sustain a guilty verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Sattler*, 1998 MT 57, ¶56, 956 P.2d 54, ¶56, 55 St.Rep. 230, ¶56 (citation omitted). The jury is free to weigh the evidence and determine the credibility of all witnesses in making its factual findings; this Court will not reweigh evidence or credibility on appeal. We review the jury's verdict only to determine whether it is supported by sufficient evidence, not to determine whether there was evidence to support a different verdict. *Sattler*, ¶59-60.

¶25 Lodge was convicted of criminal endangerment under § 45-5-207(1), MCA (1993). This statute provides, in relevant part, that "[a] person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment." The State asserted in Count II that Lodge committed the crime of criminal endangerment when he "caus[ed] the vehicle he was driving to cross into the oncoming vehicular lane of Central Avenue Southwest, causing said vehicle to narrowly miss striking a police vehicle being driven in the opposite direction by Harlem Police Officer Robert Painter." The State introduced testimony from Painter that Lodge nearly struck him when Lodge crossed over the centerline in front of his patrol car after he had set up the roadblock.

¶26 Lodge argues that the State did not prove that he committed criminal endangerment as charged in Count II because the State's evidence concerning this incident was inconsistent, contradictory, and not credible. Lodge asserts that Johnson did not give any testimony that corroborated Painter's testimony. Beyond this, Lodge alleges that Painter's testimony was directly contradicted by Johnson's testimony. Lodge also argues that the prosecution failed to prove beyond a reasonable doubt that he was driving the car. Lodge points out that Painter was the only witness who testified that he saw Lodge driving the car. Lodge asserts that Painter's testimony to this end was not credible since the car chase occurred at night, the car's windows were tinted and rolled up, and Painter was in a position to see the inside of the car only when he was driving alongside the car at 45 miles per hour.

¶27 The testimony of one witness, however, is sufficient to establish a fact. Section 26-1-301, MCA (1993). *See also State v. Ahmed* (1996), 278 Mont. 200, 212, 924 P.2d 679, 686, *cert. denied* (1997), ___ U.S. ___, 117 S.Ct. 748, 136 L.Ed.2d 686 (citations omitted). Moreover, the trier of fact determines the credibility of the witnesses and the weight that is to be given to their testimony. *Ahmed*, 278 Mont. at 212, 924 P.2d at 686. If evidence conflicts, the trier of fact determines which evidence shall prevail. *Ahmed*, 278 Mont. at 212, 924 P.2d at 686. This Court will not set aside a jury's factual findings and credibility determinations on appeal. *Ahmed*, 278 Mont. at 212, 924 P.2d at 686.

¶28 The trier of fact in the case at bar, the jury, heard all of the direct and circumstantial evidence presented and found that Lodge was the driver and that he almost collided with Painter's patrol car when he drove the car into the oncoming lane. Even though there was evidence admitted at trial to support a different verdict, Painter's testimony that Lodge was the driver and about the near collision at the roadblock was sufficient to support the jury's guilty verdict for criminal endangerment.

¶29 Thus, after viewing the evidence in the light most favorable to the prosecution, as we are constrained to do, we conclude that a rational trier of fact could have found the essential elements of criminal endangerment beyond a reasonable doubt. Accordingly, we affirm Lodge's conviction for criminal endangerment as charged in Count II.

## Issue 2.

¶30 Did the District Court err in denying Lodge credit for time already served against his sentence for criminal endangerment?

¶31 Lodge contends that, under § 46-18-403(1), MCA (1993), he is entitled to receive credit for time served against his sentence for criminal endangerment. The State argues that since Lodge failed to object to the sentence below he is barred from raising this claim for the first time on appeal. The State also argues that since the District Court gave Lodge credit for time served against his misdemeanor sentences, the sentence complied with § 46-18-403(1), MCA (1993).

¶32 As a general rule, this Court does not review issues that were not preserved for

appeal in the court below. *State v. Nelson* (1995), 274 Mont. 11, 18, 906 P.2d 663, 667 (citing §§ 46-20-205 and 46-20-701, MCA). This Court may, however, review a sentence imposed in a criminal case if it is asserted that the sentence is illegal or exceeds statutory mandate, even if no objection is made at the time of sentencing. *Nelson*, 274 Mont. at 18, 906 P.2d at 667 (citing *State v. Lenihan* (1979), 184 Mont. 338, 602 P.2d 997 and *State v. Hatfield* (1993), 256 Mont. 340, 846 P.2d 1025). The State argues that this Court should not review Lodge's sentence because Lodge has not demonstrated that his sentence was either illegal or exceeded statutory mandate. We disagree.

¶33 Section 46-18-403(1), MCA (1993), states in pertinent part, that "[a]ny person incarcerated on a bailable offense and against whom a judgment of imprisonment is rendered *shall* be allowed credit for each day of incarceration prior to or after conviction." (Emphasis added). The statute is mandatory; it requires credit for time served prior to or after conviction on a bailable offense. Criminal endangerment under § 45-5-207, MCA (1993), is a bailable offense. Section 46-9-102(1), MCA (1993). Section 46-18-403(1), MCA (1993), therefore, requires that Lodge receive credit for the 206 days served prior to his conviction for criminal endangerment. The statute does not permit a district court to withhold credit for time already served on a bailable offense because credit was given on other sentences that run concurrently to the sentence for the bailable offense. The statute requires the district court to give credit for time already served against a sentence for a bailable offense even when that sentence is to run concurrently with another sentence that has been credited with time already served. Because Lodge did not receive credit for time served against his sentence for criminal endangerment, his sentence was illegal. Therefore, because Lodge was not sentenced in accordance with § 46-18-403(1), MCA (1993), we can review the sentence even though Lodge did not object at the sentencing hearing and, in fact, acquiesced to the sentence.

¶34 In sum, Lodge's sentence for criminal endangerment was illegal because Lodge was not given credit for time served which the court was required to grant under § 46-18-403(1), MCA (1993). Thus, we reverse and remand and direct the District Court to enter an order giving Lodge credit for time already served against his felony sentence for criminal endangerment.

¶35 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER